UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

DENISE WALLET
    Plaintiff.

V.

CITY OF DETROIT
    Defendant.

Hon.

Case No.:

## COMPLAINT

Plaintiff, complaining of the Defendant, alleges and says:

## PARTIES

1. Plaintiff Sergeant Denise Wallet is a resident of Michigan, in a city that is within the jurisdiction of this Court.

2. Defendant City of Detroit is a municipal corporation organized and existing under the laws of the State of Michigan with its principal place of business in Detroit, Michigan.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331 and 28 USC § 1343, as this action arises under the Constitution and laws of the United States, specifically and.

4. This Court has personal jurisdiction over City of Detroit because Defendant is a municipal corporation organized under the laws of the State of Michigan with its

principal place of business in Detroit, Michigan, and is therefore a resident of the State of Michigan.

5. Venue is proper in this court pursuant to 28 USC § 1391, as Defendant resides in this district and a substantial part of the events giving rise to the claims occurred in Detroit, Michigan, which is located within the Southern Division of the Eastern District of Michigan as defined in 28 USC § 102.

## STATEMENT OF FACTS

6. Plaintiff Sergeant Denise Wallet is a member of the Detroit Police Department (DPD) with the rank of Sergeant, Badge S-712, assigned to the Third Precinct.

7. Plaintiff has been employed by the DPD since December 14, 1998, and has seniority dating to that date.

8. As a tenured employee with over twenty-seven years of service, Plaintiff has a constitutionally protected property interest in her employment and compensation.

9. On February 9, 2026, at approximately 3:15 p.m., Plaintiff responded to an officer's request for a supervisor at a traffic stop in Detroit, Michigan.

10. The officer requested a sergeant to the scene because the subject could not be identified had provided a phot of a fraudulent electronic Michigan Driver License, and Plaintiff was provided a fingerprint scanner by DPD.

11. Upon arrival at the scene, Plaintiff attempted to identify the subject using a fingerprint scanner but was unable to do so.

12. At one point during the traffic stop, Plaintiff made a verbal comment expressing her disagreement with the DPD policy regarding immigration and collaboration with the federal government.

13. Plaintiff's comment was a statement of opinion on a matter of public concern and did not constitute any action in violation of DPD policy.

14. After her attempts to identify the subject were unsuccessful, Plaintiff contacted U.S. Border Patrol.

15. Plaintiff contacted U.S. Border Patrol solely for the purpose of identifying the individual who was in custody, not to enforce immigration law or to inquire into the subject's immigration status.

16. At the time Plaintiff contacted Border Patrol, she had no knowledge of the subject's legal status in the United States and did not inquire into his immigration status.

17. Body camera footage from the incident and a statement made by Plaintiff's lieutenant confirm that Plaintiff contacted Border Patrol only because her lieutenant instructed her to do so.

18. Upon their arrival, Border Patrol agents identified the subject and took him into their custody for violation of immigration laws.

19. On February 10, 2026, Chief of Police Todd A. Bettison issued an inter-office memorandum suspending Plaintiff with pay, effective February 9, 2026, most likely based on misinformation that he received from his subordinates.

20. The memorandum stated that Plaintiff's actions were in violation of City Ordinance 23-8-4(a)(2) and DPD policy, and that the matter was under administrative investigation.



**INTER-OFFICE MEMORANDUM**
**CHIEF OF POLICE**

Todd A. Bettison
Chief of Police      D.P.D. 568 (rev. 11/24)

Date: February 10, 2026

To: 1st Assistant Chief Charles Fitzgerald, Office of Enforcement Operations (Direct)
Assistant Chief Eric Ewing, Office of Field Support (Direct)
Assistant Chief Franklin Hayes, Office of Strategic Policing (Direct)

Subject: CHANGE IN DUTY STATUS OF SEGEANT DENISE WALLET TO SUSPENDED WITH PAY

From: Chief of Police Todd A. Bettison

| RANK: | Sergeant |
| BADGE: | S-712 |
| PENSION: | 235364 |
| SENIORITY: | 12/14/1998 |
| COMMAND: | Third Precinct |

| CURRENT DUTY STATUS: | Full Duty |
| REVISED DUTY STATUS: | Suspended w/ Pay |
| EFFECTIVE DATE: | 2/9/2026 |

| DATE OF INCIDENT: | 2/9/2026 |
| INCIDENT LOCATION: | Detroit, MI |

| Historical Duty Status | | | |
| Date | Status | Date | Status |
| | | | |

**REASON FOR DUTY STATUS CHANGE:**
On February 9, 2026, at approximately 3:15 pm, Sergeant Denise Wallet responded to an officer's request for a supervisor at a traffic stop. The officer requested a sergeant to the scene because the subject did not speak English and provided a fraudulent electronic Michigan Driver License. Upon arrival, Sergeant Wallet was unable to identify the subject using a fingerprint scanner. At one point, Sergeant Wallet commented on how she does not agree with the DPD policy regarding immigration and collaboration with the federal government. After her attempts to identify the subject were unsuccessful, she elected to contact U.S. Border Patrol who responded to the scene. Upon their arrival, they identified the subject and took him into their custody for violation of immigration laws.

Sergeant Wallet's actions were in violation of City Ordinance 23-8-4(a)(2) and DPD policy. This matter is under administrative investigation.

It is hereby ordered that Sergeant Denise Wallet shall be carried:
**SUSPENDED W/ PAY**

TODD A. BETTISON
Chief of Police

TAB/mm

cc: Commander Fulgenzi          Police Personnel
    Centralized Timekeeping     Internal Affairs
    Human Resources Bureau      Labor Relations
    Disciplinary Administration Police Medical
    Police Payroll              DPLSA

Form Revised 10/27/23

21. Plaintiff was not provided with prior notice of the suspension or an opportunity to be heard before the suspension was imposed.

22. The suspension with pay prevents Plaintiff from working overtime shifts, thereby reducing her compensation.

23. The Detroit Police Department Manual allows for such suspensions only in the most extreme of cases.

> **102.4 - 2.3 Authority Where Immediate Action is Necessary**
> The Department must at all times preserve order and efficiency. For this reason, supervisors are authorized to summarily suspend a member (with pay) in circumstances where a member's alleged misconduct is so egregious, insubordinate, or threatening that the Department should not allow the member to carry on as a law enforcement officer. Such suspensions are strictly for the purpose of preserving order and efficiency and are not to be used as a form of discipline.

24. Any claim that contacting Border Patrol, as ordered to by her lieutenant, and in a manner that clearly and obviously does not even violate any DPD policy, in no universe reaches such a high level.

25. A Police Board of Commissioners disciplinary hearing is scheduled for February 19, 2026, during which Plaintiff faces termination or suspicion *__without__* pay.

26. The DPD has enacted policies restricting members' contact with federal immigration authorities, including a Communications Operations Directive dated February 21, 2020 (Teletype #20-0098), and Training Directive 20-03 dated August 25, 2020.

27. The Communications Operations Directive provides that members shall not contact Border Patrol or any other federal agency for **_TRANSLATION SERVICES_**, and instead shall request a translator via dispatch.



28. Training Directive 20-03 prohibits members from soliciting information concerning immigration status for the purpose of ascertaining a person's compliance with federal immigration law, or from any person who is seeking police services or is a victim or witness.

29. Training Directive 20-03 authorizes members to solicit information concerning immigration status only from the subject of an investigation when relevant to the investigation or prosecution of a violent criminal offense, or when processing an arrested person on suspicion of committing a violent criminal offense.

30. It cannot be claimed and is not even being alleged that Plaintiff was "soliciting information concerning immigration status."



31. The DPD policies restrict members' ability to communicate with federal immigration authorities regarding citizenship or immigration status.

32. Not only did Plaintiff not violate this policy, but 8 USC § 1373 provides that no state or local government entity or official may prohibit or restrict any government entity or official from sending to, or receiving from, federal

immigration authorities information regarding the citizenship or immigration status of any individual.

33. The DPD policies, as applied to Plaintiff, violate 8 USC § 1373 by restricting her ability to communicate with federal immigration authorities for legitimate law enforcement purposes, including identification of individuals in custody.

34. Plaintiff's contact with Border Patrol was for the purpose of identifying a suspect in custody, a legitimate purpose, and was at the direction of her lieutenant.

35. Plaintiff did not contact Border Patrol to enforce immigration law, to inquire into a subject's immigration status, or for any purpose prohibited by DPD policy.

36. The suspension and anticipated further discipline are based on Defendant's enforcement of policies that violate federal law and Plaintiff's civil rights.

37. Further, there seems to be a misinformation campaign, as is evidenced by posters such as these, despite that it is crystal-clear that Plaintiff did not contact Border Patrol for translation services and thus did not violate DPD policy:




# CLAIMS FOR RELIEF

## Count I - Deprivation of Procedural Due Process Rights in Violation of USC Const. Amend. 14 and 42 USC § 1983 (Suspension with Pay) (against defendant City of Detroit)

36. Plaintiff repeats and realleges all prior allegations.

37. Plaintiff possessed a constitutionally protected property interest in her employment and compensation, including overtime compensation.

38. Plaintiff is a tenured employee of the Detroit Police Department with seniority dating to December 14, 1998, and has a legitimate expectation of continued employment and the opportunity to work overtime shifts.

39. Defendant deprived Plaintiff of her property interest in overtime compensation.

40. On February 10, 2026, Defendant suspended Plaintiff with pay, effective February 9, 2026, thereby preventing her from working overtime shifts and earning overtime compensation.

41. The suspension with pay constitutes an adverse action that reduces Plaintiff's compensation.

42. Defendant deprived Plaintiff of her property interest without adequate notice and opportunity to be heard.

43. Plaintiff was not provided with prior notice of the suspension or an opportunity to be heard before the suspension was imposed.

44. The memorandum suspending Plaintiff indicates that an administrative investigation was ongoing at the time of suspension, suggesting that no final determination had been made regarding the alleged policy violations.

45. The deprivation was effected under color of state law.

46. The suspension was imposed by Chief of Police Todd A. Bettison, a municipal official acting in his official capacity pursuant to DPD policy.

47. As a result of Defendant's deprivation of Plaintiff's procedural due process rights, Plaintiff has suffered and continues to suffer damages, including lost overtime compensation, emotional distress, and reputational harm.

## Count II - Deprivation of Procedural Due Process Rights in Violation of USC Const. Amend. 14 and 42 USC § 1983 (Anticipated Suspension Without Pay or Termination) (against defendant City of Detroit)

48. Plaintiff repeats and realleges all prior allegations.

50. Plaintiff possesses a constitutionally protected property interest in her employment.

51. Plaintiff is a tenured employee of the Detroit Police Department with seniority dating to December 14, 1998, and has a legitimate expectation of continued employment.

52. Defendant intends to deprive Plaintiff of her property interest in employment.

53. A disciplinary hearing is scheduled for February 19, 2026, at which Plaintiff has good reason to believe the Police Board of Commissioners will impose further discipline, including suspension without pay or termination.

54. The anticipated discipline is based on alleged policy violations that are either pretextual or do not constitute actual violations, as Plaintiff contacted Border Patrol solely to identify an individual in custody at her lieutenant's direction, not to enforce immigration law or inquire into immigration status.

55. Defendant will deprive Plaintiff of her property interest without adequate notice and opportunity to be heard.

58. Although a hearing is scheduled for February 19, 2026, the process provided is inadequate because Plaintiff has already been suspended based on allegations that are not supported by the facts, and the hearing does not provide sufficient procedural protections to guard against erroneous deprivation.

59. The suspension memorandum indicates that an administrative investigation was ongoing, yet Plaintiff was suspended before the investigation was completed and before she was afforded a meaningful opportunity to respond.

60. The deprivation is being effected under color of state law.

61. The anticipated suspension without pay or termination will be imposed by the Police Board of Commissioners, a municipal body acting pursuant to DPD policy and municipal authority.

62. As a result of Defendant's deprivation of Plaintiff's procedural due process rights, Plaintiff will suffer damages.

### Count III - Violation of
### 8 USC § 1373, as applied by DPD to Plaintiff
### (against defendant City of Detroit)

82. Plaintiff repeats and realleges all prior allegations.

83. Defendant has enacted and enforces policies that restrict communication with federal immigration authorities.

84. The DPD Communications Operations Directive dated February 21, 2020, prohibits members from directly contacting Border Patrol or other federal agencies for translation services.

85. DPD Training Directive 20-03 dated August 25, 2020, restricts members' solicitation of immigration status information and prohibits members from contacting federal immigration authorities except in limited circumstances involving violent criminal offenses.

86. These policies restrict Plaintiff's ability to communicate with federal immigration authorities.

87. Defendant has applied these policies to Plaintiff in a manner that restricts her ability to communicate with federal immigration authorities regarding the identification of individuals in custody.

88. Defendant suspended Plaintiff based on her contact with Border Patrol, even though that contact was made solely for the purpose of identifying an individual in custody and was made at her lieutenant's direction.

89. The restriction or prohibition violates 8 USC § 1373.

90. 8 USC § 1373 provides that no state or local government entity or official may prohibit or restrict any government entity or official from sending to, or receiving from, federal immigration authorities information regarding the citizenship or immigration status of any individual.

91. 8 USC § 1373 further provides that no person or agency may prohibit or restrict a state or local government entity from sending such information to, or requesting or receiving such information from, federal immigration authorities, or from maintaining or exchanging such information with any other federal, state, or local government entity.

92. Defendant's policies, as applied to Plaintiff, prohibit or restrict communication with federal immigration authorities in violation of 8 USC § 1373.

93. Plaintiff contacted Border Patrol solely to identify an individual in custody, a legitimate law enforcement purpose, and did not involve immigration status.

94. Even if Plaintiff's contact with Border Patrol involved discussing immigration status, 8 USC § 1373 prohibits Defendant from limiting such communication.

95. Defendant has applied the policies to Plaintiff in a manner that violates 8 USC § 1373 by suspending her and threatening further discipline based on her contact with Border Patrol for identification purposes.

96. As a result of Defendant's violation of 8 USC § 1373, Plaintiff suffered harm.

### Count V - Municipal Liability Under 42 USC § 1983 (against defendant City of Detroit)

98. Plaintiff repeats and realleges all prior allegations.

99. Defendant City of Detroit has enacted and maintains policies, customs, or practices that violate the Constitution and federal law.

100. Defendant has enacted DPD policies, including the Communications Operations Directive dated February 21, 2020, and Training Directive 20-03 dated August 25, 2020, that restrict members' ability to contact federal immigration authorities and solicit immigration status information.

101. These policies, as applied to Plaintiff, violate her constitutional due process rights under USC Const. Amend. 14 and her First Amendment rights, and violate 8 USC § 1373.

102. Defendant's policies were the moving force behind the constitutional violations alleged in this Complaint.

103. Defendant suspended Plaintiff and intends to impose further discipline based on her alleged violation of these policies, even though her contact with Border

Patrol was made at her lieutenant's direction and solely for the purpose of identifying an individual in custody.

104. The suspension and anticipated further discipline were caused by Defendant's enforcement of policies that violate the Constitution and federal law.

105. Defendant's policies restrict officers' ability to communicate with federal immigration authorities in violation of 8 USC § 1373, and Defendant's enforcement of these policies against Plaintiff, including suspension and threatened termination, deprives her of due process and retaliates against her for expressing disagreement with the policies.

106. As a result of Defendant's policies, customs, and practices, Plaintiff has suffered and continues to suffer damages, including lost overtime compensation, lost wages, emotional distress, and reputational harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaratory judgment that Defendant's suspension of Plaintiff with pay without prior notice and opportunity to be heard violates Plaintiff's procedural due process rights under USC Const. Amend. 14.

B. A declaratory judgment that Defendant's anticipated suspension of Plaintiff without pay or termination of her employment without adequate process violates Plaintiff's procedural due process rights under USC Const. Amend. 14.

C. A declaratory judgment that Defendant's suspension of Plaintiff and anticipated further discipline based on her verbal comment expressing disagreement with DPD policy violates Plaintiff's First Amendment rights under USC Const. Amend. 14.

D. A declaratory judgment that Defendant's policies restricting communication with federal immigration authorities, as applied to Plaintiff, violate 8 USC § 1373.

E. A preliminary and permanent injunction enjoining Defendant from imposing further discipline on Plaintiff, including suspension without pay or termination, based on the alleged policy violations described in this Complaint.

F. A preliminary and permanent injunction enjoining Defendant from enforcing its immigration policies in a manner that violates 8 USC § 1373 by restricting officers' ability to engage with federal immigration authorities for legitimate law enforcement purposes, including identification of individuals in custody.

G. Compensatory damages against Defendant in an amount to be determined at trial, including lost overtime compensation, lost wages, emotional distress, and reputational harm.

H. Reinstatement of Plaintiff to full duty status without restrictions.

I. Pre-judgment and post-judgment interest as allowed by law.

J. Reasonable attorney's fees and costs pursuant to 42 USC § 1988.

K. Such other relief as the Court deems just and proper.

                                      Respectfully Submitted,

                                      /s/ Solomon M Radner
                                      Solomon M. Radner (P73653)
                                      Radner Law Group, PLLC
                                      Counsel for Plaintiff
                                      17515 W Nine Mile Rd, Suite 1050
                                      Southfield, MI 48075
                                      T: (877) 723-6375 F: (866) 571-1020
                                      solomon@radnerlawgroup.com

Dated: Feb. 19, 2026


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

                                      Respectfully Submitted,

                                      /s/ Solomon M Radner
                                      Solomon M. Radner (P73653)
                                      Radner Law Group, PLLC
                                      Counsel for Plaintiff
                                      17515 W Nine Mile Rd, Suite 1050
                                      Southfield, MI 48075
                                      T: (877) 723-6375 F: (866) 571-1020
                                      solomon@radnerlawgroup.com

Dated: Feb. 19, 2026